**In re VANGUARD AIRLINES, INC., Debtor.**

**Vanguard Airlines, Inc., Plaintiff,**

**v.**

**Airline Automation, Inc., Defendant.**

**Bankruptcy No. 02–50802.
Adversary No. 03–04104.**

United States Bankruptcy Court, W.D. Missouri.

June 16, 2003.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

The matter before the Court at this time in this Adversary Proceeding is a Motion for Summary Judgment filed by Defendant Airline Automation, Inc.

Vanguard Airlines, Inc., the Debtor in these Chapter 11 proceedings ("Debtor" or "Vanguard"), filed a Complaint against Airline Automation, Inc. ("Defendant" or "AAI") on January 24, 2003, seeking to recover $136,727.23 from AAI in alleged preferential transfers made within 90 days of the bankruptcy filing, pursuant to 11 U.S.C. §§ 547 and 550. The Defendant filed its Motion for Summary Judgment

("Motion") on March 27, 2003. The issues were fully briefed and the Court heard oral arguments on May 22, 2003, and took the matter under advisement. After consideration of the pleadings and counsel's arguments, and after a review of relevant law, the Court is now prepared to rule.[1]

For the reasons set out below, the Court will grant the Defendant's Motion and will dismiss the Adversary Proceeding.[2]

## FACTUAL BACKGROUND [3]

The Defendant, AAI, is a software development company that provides a variety of automated computer program services that are used by airlines to help manage their reservations and flight information. Vanguard and AAI entered into an "Information Technology Master Services Agreement" (the "Master Services Agreement") with an effective date of February 19, 2001, under the terms of which AAI provided up to thirteen different computer programs and services to Vanguard. The scope and description of the services provided were set out in separate "Task Orders." The programs were "robotic" programs that continuously monitored Vanguard's flight reservations system and related data, responding to information that was entered in the system by Vanguard or travel agents.

Section 4.1 of the Master Services Agreement provided that AAI would invoice Vanguard monthly in advance for

---

1. The Debtor filed a Motion to Strike the Defendant's Motion for Summary Judgment (Document # 17) on April 17, 2003, and the Defendant in apparent response filed a Motion (Document # 20) on April 24, 2003, seeking a determination that the Debtor had waived the right to contest the Motion for Summary Judgment. Both of these Motions are without merit and will be denied.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a).

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to these proceedings by Federal Rule of Civil Procedure 52.

3. The Defendant submitted two affidavits, with attached exhibits, in support of its Motion. Likewise, the Debtor submitted two affidavits in support of its Response.

each month's estimated charges. Payments were due 30 days after the date of the invoice. The actual amount that Vanguard would owe AAI for its services in a given month depended on how much activity occurred in Vanguard's reservation and flight data systems in that month. At the end of each month, the actual amount of service usage would be reconciled with the estimated amount charged at the beginning of the month, and Vanguard would then be billed for any additional charges that might be due (or would receive a credit if the actual usage fell below the estimated amount). Under the Master Services Agreement, if Vanguard failed to timely pay an invoice, it was entitled to a 15–day notice of default before AAI could cease providing services. As a result, Vanguard could receive at least 45 days of services without payment before AAI could terminate the services.

On September 24, 2001, AAI gave Vanguard notice of default for nonpayment and of its intent to terminate the Master Services Agreement on October 9, 2001, unless Vanguard cured the default. After some negotiations, the parties entered into a "First Amendment to Information Technology Services Agreement" (the "First Amendment") on November 1, 2001. According to the First Amendment, Vanguard owed AAI $82,780.28 in past due amounts and for September and October charges. The First Amendment had several major requirements or components:

(1) Vanguard was required to make weekly payments of $15,000.00 each in October and November so as to completely pay the $82,780.28 in arrearages by No-

vember 23, 2001, as well as paying the estimated charges for November on a timely basis.

(2) Vanguard was required to start making *weekly* payments equal to 25 percent of the amounts on the monthly invoices, rather than making *monthly* payments, as it had previously been doing.[4]

(3) If Vanguard failed to meet the payment schedule set out in the First Amendment, and failed to cure any payment default within five business days, AAI could terminate the Master Services Agreement without further notice, and Vanguard would have no right to cure the default or reinstate the Master Services Agreement.

(4) Section 4.1 of the Master Services Agreement was amended to provide that Vanguard would be given only five business days to cure a default under the Master Services Agreement going forward, instead of the 15 calendar days that had previously been allowed, before services would be terminated by AAI.

(5) The First Amendment contained a bold-face, capitalized provision stating that time was of the essence with respect to the payment obligations set out therein.

In accordance with the First Amendment, between December 1, 2001, and July 22, 2002, AAI sent Vanguard monthly invoices estimating the cost of the services for the particular month and Vanguard made weekly payments equal to 25 percent of the invoiced amounts. The last payment, in the amount of $12,140.77, was made on July 22, 2002. Vanguard did not make the payment required on July 29,

---

**4.** The First Amendment provided an example for the new payment arrangements. AAI would invoice Vanguard on or before December 1, 2001, for the estimated charges for December, based on the then-current level of usage and volumes, along with an adjustment for Vanguard's actual usage in September and October 2001. Commencing on December 7, 2001, and continuing on each Friday thereafter, Vanguard would pay 25 percent of the invoiced amount. The January 2002 invoice would reflect estimated charges for January 2002 and the reconciled charges for November 2001, and so on.

2002, and filed its Chapter 11 bankruptcy petition on July 31, 2002, leaving a balance owed of $9,550.59 (after adjustments) on the July 1 invoice.

In the 90–day preference period established by 11 U.S.C. § 547(b), Vanguard paid AAI $136,727.23, and it is this amount that Vanguard sought to recover in its adversary complaint. However, counsel for the parties have indicated to the Court in argument that the amount actually in dispute is approximately $10,000.00.

## DISCUSSION

### 1. The standard for summary judgment

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), FED.R.CIV.P.; Rule 7056, FED.R.BANKR.P.; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Jeseritz v. Potter*, 282 F.3d 542, 545 (8th Cir.2002). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather, as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex* at 327, 106 S.Ct. 2548. To survive a motion for summary judgment, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial. *Rose–Maston v. NME Hospitals, Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998). A plaintiff may not rest upon mere denials or allegations to survive a summary judgment motion. *Id.* The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214 (1986).

In this case, Vanguard argues in its Response that the Defendant has failed to demonstrate the absence of a genuine issue of material fact and that it has failed to show that it is entitled to judgment as a matter of law. The Court disagrees. Although Vanguard asserts that there are genuine issues of material fact, it has failed to point out any such facts to the Court and the Court's review of all of the papers submitted has not unearthed any *material facts* that are in dispute. In fact, Vanguard has pointed out very few disagreements between the parties on *any* facts, whether material or not. As to the second argument, the facts indeed do demonstrate that AAI is entitled to judgment in its favor as a matter of law, as will be discussed below.

### 2. The Debtor's payments to AAI were not for an antecedent debt

■ The Defendant first contends that the weekly payments received from Vanguard in the 90 days preceding Vanguard's bankruptcy filing were not for antecedent debt, as proscribed by Section 547 of the Bankruptcy Code ("Code").[5] The Debtor asserts that they were.

Section 547(b) of the Code provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

---

**5.** Title 11, United States Code.

(4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

There is no dispute here that the payments at issue were made to AAI in the 90 days before the date of the filing of Vanguard's bankruptcy petition, that they were made when the Debtor was insolvent, and that they enabled AAI to receive more than it would have received in a bankruptcy liquidation. The sole issue under § 547(b) in this case is whether the payments to the Defendant were made "on account of an antecedent debt."

   ■■■ This point is quickly resolved. A debt is antecedent "if it was incurred before the allegedly preferential transfer. A debt is incurred 'on the date upon which the debtor first becomes legally bound to pay.'" *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund (In re Jones Truck Lines, Inc.),* 130 F.3d 323, 329 (8th Cir.1997),

*quoting Iowa Premium Service Co., Inc. v. First National Bank in St. Louis (In re Iowa Premium Service Co., Inc.),* 695 F.2d 1109, 1111 (8th Cir.1982). The right to payment generally arises when the debtor obtains the goods or services. *In re First Jersey Securities, Inc.,* 180 F.3d 504, 510 (3rd Cir.1999).

In an argument that is most unusual for a debtor, Vanguard asserts that it had a legal obligation to pay the estimated charges for a particular month when it received an invoice at the beginning of that month from AAI. "That is simply antecedent debt paid in four weekly installments..." (Vanguard Response, pp. 6–7).[6] Unfortunately for Vanguard, this argument makes no sense to the Court. Surely, Vanguard is not contending that a debt arose when an invoice was created or received and that it would be legally bound to pay that invoice regardless of whether AAI provided the computer services covered by that invoice. An invoice does not create or establish a debt; it simply memorializes the debt. Merely providing an invoice does not give a creditor a right to payment. *See* 11 U.S.C. § 101(5) ("claim" means a "right to payment..."). An invoice estimating the cost of services to be provided in the future does not create a debt. The debt arises when the debtor receives the goods or services and is then legally bound to pay, not when the creditor chooses to invoice the debtor for the work or services. *Sandoz v. Fred Wilson Drilling Company (Matter of Emerald Oil Co.),* 695 F.2d 833, 837 (8th Cir.1983). In this case, a debt to AAI did not arise until AAI provided the services it had contracted with Vanguard to provide; a debt was *not*

---

6. Vanguard's arguments are inconsistent and contradictory. On page 9 of its Response, Vanguard states that it "was paying an antecedent debt based on invoices that estimated a *potential* debt for work that Defendant estimated it *might* do in the upcoming month."

(emphasis in original) Thirteen lines later on that same page, Vanguard states: "The First Amendment created a debt on Day 1 of a given month that had to be paid in four equal installments."

incurred by Vanguard when AAI issued its invoice.

If anything, Vanguard was making payment contemporaneously with the provision of the services by AAI (discussed more fully below). Under the First Amendment to the Master Services Agreement, Vanguard was contractually obligated to pay for the services that it received on a weekly basis, as those services were being provided, *not* at the time it received the invoice. Vanguard would have had no obligation or legal duty to pay the invoice if the services were not provided, because AAI would have had no right to payment. Nor was Vanguard required to pay the invoice on the second or third day of the month, before the services were rendered.

For these reasons, the Court holds that the payments Vanguard made to AAI in the 90 days preceding Vanguard's bankruptcy filing were not on account of an antecedent debt, and therefore the payments made to AAI were not preferential.

### 3. The payments were substantially contemporaneous

■ Alternatively, AAI asserts that, even if the payments made by the Debtor should be found to be on account of antecedent debt, they represented a substantially contemporaneous exchange for new value given to Vanguard, and therefore are protected. The Court agrees.

■ Under 11 U.S.C. § 547(c)(1), Vanguard may not avoid a transfer to the extent that such transfer was intended by the debtor and the creditor to be a contemporaneous exchange for new value given to the debtor and was, in fact, a sub-

stantially contemporaneous exchange.[7] "Contemporaneous new value exchanges are not preferential because they encourage creditors to deal with troubled debtors *and* because other creditors are not adversely affected if the debtor's estate receives new value." *Jones Truck Lines*, 130 F.3d at 326. (emphasis in original)

■ In determining whether there has been a contemporaneous exchange for new value, the critical inquiry is whether the parties intended such an exchange. *Tyler v. Swiss American Securities, Inc. (In re Lewellyn & Co., Inc.)*, 929 F.2d 424, 428 (8th Cir.1991). That intent may be determined by examining (a) the terms of the agreement which required the payments and (b) the course of dealing engaged in by the parties. *Id.* In the instant case, the First Amendment required Vanguard to pay for the services it was receiving on a weekly basis, on the basis of a monthly invoice rendered at the first of each month. And, for more than six months, and right up to the time it filed its Chapter 11 petition, Vanguard did, in fact, make virtually all of the required payments on a weekly basis. These facts clearly demonstrate the parties' intent that there was to be a contemporaneous exchange for new value.

Despite the contractual requirements and its almost exemplary adherence to those requirements, Vanguard nevertheless argues that it did not intend to "create" a contemporaneous exchange for new value. In its argument and in the affidavit of David A. Rescino, the Debtor's then-vice president and chief financial officer, Van-

---

7. The statute provides:
    (c) The trustee may not avoid under this section a transfer—
      (1) to the extent that such transfer was—
      (A) intended by the debtor and the creditor to or for whose benefit such transfer

was made to be a contemporaneous exchange for new value given to the debtor; and
      (B) in fact a substantially contemporaneous exchange;
11 U.S.C. § 547(c).

guard correctly points out that the phrase "contemporaneous exchange for new value" does not appear in the First Amendment, and further states that that phrase was never used in the discussions leading up to the First Amendment. The Court has little doubt that this latter statement is accurate; in fact, it would be highly unusual for businessmen negotiating an agreement such as the First Amendment to use such a legalistic and technical bankruptcy phrase. The Court would find it incredible if Vanguard were to suggest that the parties actually did use that phrase in their negotiations, particularly when the First Amendment contains no references to a possible bankruptcy and was negotiated almost nine months before Vanguard initiated its bankruptcy proceedings.

More telling is the sentence that follows the foregoing statements in Rescino's affidavit: "Vanguard simply intended to reduce the amount that would be owed to AAI at any given point in time." When that statement is considered in light of the weekly payments required under the First Amendment and made by Vanguard, as the services were being rendered by AAI, it becomes crystal clear that the intent of the parties was that Vanguard should pay for the services at basically the same time they were being provided to Vanguard.

There is yet another indication that AAI and Vanguard intended that the Debtor's payments were to be made contemporaneously with the provision of the services. In the First Amendment, the parties agreed that AAI could terminate the Master Services Agreement if Vanguard failed to make any weekly payment within five business days of the date it was due. Previously, the Debtor had had a 15–day grace period for late payments. The importance of this point was driven home with the prominent, bold-faced, capitalized sentence in the First Amendment stating:

"Time is of the essence with respect to the payment obligations under this amendment." In short, if the Debtor did not pay, and pay promptly, as the services were being provided, the Defendant would be free to terminate the Master Services Agreement and cease providing services. The obvious purpose of these provisions was, as admitted by Rescino, to reduce the amount that might be owed to AAI at any given time—in other words, to prevent the Debtor from again falling behind by several weeks in its payment obligations.

AAI relies heavily on the Eighth Circuit's *Jones Truck Lines* case, *supra*, in which the issues are strikingly similar to this case. That reliance is well placed. In that case, Jones Truck Lines was obligated under a collective bargaining agreement to make monthly contributions to an employee benefit plan. The amount of the contribution was based on the number of employees and the salaries paid. Jones defaulted in making its monthly payments and Central States, the trustee of the benefit fund, threatened to take legal action. Jones and Central States then entered into an agreement providing for curing the default and requiring Jones to pay the contributions on a weekly basis, so that, by the end of each month, all payments would be paid in full and would be current. The Eighth Circuit found that the payments were not preferential because, in exchange for the weekly payments, Jones contemporaneously received "new value" in the form of the continued labor and services provided by the employees for whose benefit the payments were being made.

As in the *Jones Truck Lines* case, the Debtor in the instant case was originally required to make monthly payments to the Defendant for the services that had been rendered in the preceding month. After the Debtor defaulted in meeting that obli-

gation, the parties agreed that Vanguard should pay for the services on a weekly basis, just as Jones Truck Lines agreed to do. And, as in the *Jones Truck Lines* case, the Debtor here made a weekly payment based on an estimated liability for that week, with adjustments made at the end of the month to arrive at the actual amounts owed. So long as Vanguard made the required weekly payments, AAI continued to provide services. It is of no consequence that the Debtor's liability for a month was estimated at the beginning of the month, as Vanguard seems to suggest.

■ Finally, the payments made by Vanguard were substantially contemporaneous, as required by § 547(c)(1)(B). "Substantially contemporaneous" is an elastic term, and "contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances." *In re Dorholt, Inc.*, 224 F.3d 871, 874 (8th Cir.2000), *quoting Pine Top Insurance Company v. Bank of America National Trust and Savings Association*, 969 F.2d 321, 328 (7th Cir.1992) (footnote omitted). In the instant case, as previously emphasized, the Debtor paid for the services provided by AAI on a weekly basis, essentially at the same time those services were being provided, albeit the amount of the required payment was determined by AAI's estimate of the services that would be provided to Vanguard in a given month. It is hard to imagine how payments for services could be any more "substantially contemporaneous" than the payments made by Vanguard in this situation. The fact that the invoices were sent to the Debtor prior to the provision of services is of no consequence.

Vanguard argues that there is no evidence that the payments in a given *week* corresponded to the services actually provided by the Defendant, because the invoices were based on a *monthly* estimate.

Therefore, it argues, "the weekly payments...cannot be contemporaneous because they are not payments for the actual services provided by Defendant..." (Response, p. 10) This argument is nonsensical and contrary to the evidence. First of all, the Court knows of no requirement that the charges for a given service must be stated with exact precision in order for a payment to be considered substantially contemporaneous. Secondly, the invoices submitted by the Defendant show that the monthly estimates for services were generally quite accurate—in four of the seven months at issue, the monthly reconciliations were less than $2,000.00, for instance, and in no month did the reconciliation amount to more than 20 percent of the invoiced amount. This demonstrates that the Debtor was, indeed, receiving the services it was paying for—in fact, it was underpaying slightly for the services that were being provided.

### 4. The payments are offset by new value

■ The Defendant further argues that the payments it received are protected under the "new value" exception of § 547(c)(4). Under 11 U.S.C. § 547(c)(4), a trustee or debtor in possession may not avoid a preference:

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4).

The Court's earlier discussion demonstrates that, even if the payments were

preferential as contended by Vanguard, they may not be recovered by Vanguard because AAI clearly gave new value after the payments were made. AAI continued to provide services to Vanguard after each weekly payment was made; had any weekly payment not been made, AAI could have terminated services upon five days' notice to Vanguard. Thus, the Court finds that AAI's receipt of the weekly payments is protected by the "new value" exception of § 547(c)(4).

Because of the Court's findings as set out herein, the Court need not address AAI's contention that the payments were protected from recovery as preferential payments because they were made in the ordinary course of business, as provided in § 547(c)(2).

Therefore, it is

**ORDERED** that the Motion for Summary Judgment filed by Defendant Airline Automation, Inc. (Document # 8) be and is hereby GRANTED and this Adversary Proceeding be and is hereby DISMISSED. All other relief requested, including an award of attorney's fees and costs, is hereby DENIED. It is

**FURTHER ORDERED** that the Debtor's Motion to Strike the Defendant's Motion for Summary Judgment (Document # 17) and the Defendant's Motion (Document # 20) seeking a determination that the Debtor waived the right to contest the Motion for Summary Judgment be and are hereby DENIED.