**In re BRIDGE INFORMATION SYSTEMS, INC., Debtor.**

**Scott P. Peltz, Plan Administrator, Plaintiff,**

v.

**United Health Care, et al., Defendant.**

Bankruptcy No. 01–41593–293.
Adversary No. 03–4418–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Oct. 2, 2003.

Gregory D. Willard, Jennifer A. Merlo, Bryan Cave, St. Louis, MO, Thomas J. Moloney, New York City, for debtor.

Peter Lumaghi, Office of U.S. Trustee, St. Louis, MO, U.S. Trustee.

David B. Goroff, Mark L. Prager, Michael J. Small, Peter E. Pinnow, Foley and Lardner, Chicago, IL, Michael A. Becker, Spencer, Fane, Britt & Browne, Clayton, MO, for Unsecured Creditors Committee.

Jennifer S. Kingston, Kevin M. Abel, Bryan Cave, St. Louis, MO, for plaintiff.

Catherine M. Esposito, Julie A. Manning, Shipman and Goodwin, Hartford, CT, for defendant.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

Scott Peltz, as Plan Administrator[1] for the estate of Bridge Information Systems, Inc. ("Bridge"), brought this adversary

---

**1.** Pursuant to the Joint Plan of Liquidation, confirmed by this Court on February 13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under § 547 on behalf of Bridge's estate.

proceeding against United Health Care ("UHC"). Plan Administrator seeks to avoid three payments totaling $ 2,497,-625.90 that Bridge made to UHC under a health insurance policy as preferential transfers under 11 U.S.C. § 547(b). The case is before the Court on UHC's Motion for Summary Judgement under Fed. R.Civ.P. 56, made applicable to this proceeding by Bankr.R. 7056. UHC argues that summary judgment is appropriate because there are no material facts in dispute that the payments in questions were not made for or on account of an antecedent debt as required by § 547(b)(2). The Court disagrees and will deny the motion.

*JURISDICTION AND VENUE*

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

*FACTUAL AND PROCEDURAL BACK-GROUND*

The material facts relating to the substantive issues contained in UHC's motion are not in dispute. Bridge and UHC entered into a health insurance policy effective January 1, 1998 (the "Policy") whereby UHC provided Bridge's employees with health care insurance in exchange for Bridge remitting monthly premiums to UHC. (Exhibit A to UHC's Motion). The Policy obligated Bridge to pay the each month's premium to UHC on the first date of each month. (Policy pg. 1; Hirsch Affidavit ¶ 8). Also, the Policy stated that if Bridge failed to pay a premium by the first of the month, UHC could not cancel the Policy for a 31 day period. (the "Grace Period"). (Policy pgs. 5 & 6). If Bridge failed to make the delinquent premium payment by the expiration of the Grace Period, the Policy automatically terminated. (Policy pg. 6).

From the effective date of the Policy, Bridge remitted each monthly premium to UHC after the due date but before the expiration of the Grace Period. (Curran Affidavit ¶ 10). Pursuant to its internal operating procedures, UHC tendered invoices to Bridge on approximately the 15th day of each month that reflected the premium for the upcoming month as well as any amount past due as of the date of the invoice. (Hirsch Affidavit ¶ 11; Curran Affidavit ¶ 14).

Plan Administrator has filed the instant adversary proceeding seeking to avoid Bridge's payment to UHC for the monthly premiums for November and December 2000 and January 2001 totaling $2,467,625.99 (collectively the "Premium Payments"). Plan Administrator maintains that the Premium Payments were preferential transfers under 11 U.S.C. § 547(b) and is attempting to recover the payments from UHC under 11 U.S.C. § 550(a)(1).

UHC remitted an invoice to Bridge and Bridge made each of the individual Premium Payments as follows (Hirsch Affidavit ¶¶ 10–13; Exhibits C, D, E & F to Motion for Summary Judgment):

| Invoice Date | Due Date Per Policy | Payment Date |
|---|---|---|
| October 11, 2000 | November 1, 2000 | November 22, 2000 |
| November 18, 2000 | December 1, 2000 | December 21, 2000 |
| December 18, 2000 | January 1, 2001 | January 25, 2001 |

UHC filed this Motion for Summary Judgment arguing that because Bridge paid each of the Premium Payments prior to the expiration of the Grace Period, each payment was not a transfer for or on account of antecedent debt under 11 U.S.C. § 547(b)(2).[2] Plan Administrator counters by arguing that Bridge was legally obligated to pay each of the Premium Payments on first day of each month under the Policy.[3] Therefore, Plan Administrator asserts that because Bridge paid each of the challenged payments after the first day of each month, each payment was on or account of an antecedent debt as required by 11 U.S.C. § 547(b)(2).

### DISCUSSION

#### A. Summary Judgment Standard

Summary judgment is proper if the record viewed in the light most favorable to the non-movant demonstrates that there are no material facts in dispute so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Evergreen Inv. v. FCL Graphics, Inc.*, 334 F.3d 750, 752 (8th Cir.2003). The movant has the initial burden of producing evidence that demonstrates the absence of a genuine issue of a material fact. *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001). Once the movant has met its initial burden, the burden then shifts to the non-movant to produce evidence that demonstrates the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997) *cert. denied* 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

#### B. The Elements of Plan Administrator's Preference Action

Section 547(b) provides that a trustee or debtor-in-possession may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

 Plan Administrator, as the party seeking to avoid the Premium Payments, bears the burden of establishing each element under § 547(b) by a preponderance of the evidence. § 547(g); *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (8th Cir. BAP 2000).

---

**2.** UHC submitted the affidavit of its Billing Director, Joseph Curran, in support of its Motion for Summary Judgment.

**3.** Plan Administrator submitted the affidavit of Mitchell Hirsh in support of his opposition to UHC's motion. Mr. Hirsh is the Director of Litigation Services Group for American Express Tax & Business Services, a corporation that provides financial advice to Plan Administrator.

*C. Bridge made the Premium Payments on account of an antecedent debt.*

██ UHC contends that there is no genuine issue of material fact that Bridge did not make the Premium Payments for or on account of an antecedent debt as required by 11 U.S.C. § 547(b)(2). The Court finds, however, that Bridge was obligated to pay each month's premium to UHC on the first each of month under the Policy and that obligation was not altered by the presence of the Grace Period. Thus, Bridge did remit the Premium Payments for or on account of antecedent debt, namely its obligation to pay the monthly premium on the first date of each month. Accordingly, the Court will deny UHC's Motion for Summary Judgment.

██ The Bankruptcy Code defines a debt as a liability on a claim. 11 U.S.C. § 101(12); *Laws v. United Mo. Bank of Kansas City*, 98 F.3d 1047, 1049 (8th Cir. 1996). A debt is antecedent for purposes of § 547(b)(2) if it is incurred prior to the debtor's alleged preferential transfer. *Harrah's Tunica Corp. v. Meeks (In re Armstrong)*, 291 F.3d 517, 522 (8th Cir. 2002). Also, a debt is incurred under § 547(b)(2) on the date that the debtor becomes legally obligated to pay the debt. *In re Iowa Premium Serv. Co.*, 695 F.2d 1109, 1111 (8th Cir.1982) (*en banc*). Accordingly, a debt is antecedent to the challenged payment under § 547(b)(2) if the creditor would have had a claim against the debtor's estate prior to the challenged payment. *Smith v. Creative Fin. Management Inc. (In re Virginia–Carolina Fin. Corp.)*, 954 F.2d 193, 197 (4th Cir.1992).

Here, as discussed above, the Policy recites that each month's premium was due on the first day of that month but also provides that UHC could not terminate the Policy during the Grace Period. Also, there is no factual dispute that Bridge made each of the Premium Payments after the first of each month but prior to the expiration of the Grace Period. Thus, the key question in the analysis of whether the debt was antecedent to the Preference Payments under § 547(b)(2) is when did Bridge become legally obligated to pay the premiums under the Policy.

UHC relies heavily on *Vanguard Airlines v. Airline Automation, Inc. (In re Vanguard Airlines)*, 295 B.R. 329 (Bankr. W.D.Mo.2003) in arguing that the Grace Period extended the time in which Bridge was obligated to pay the monthly premiums under the Policy. In *Vanguard*, the agreement between the debtor and creditor provided that the creditor would invoice the creditor for the estimated cost of monthly computer services on a weekly basis. *Id.* at 332. The agreement also gave the debtor a grace period of five days in which to make payment on the invoice. *Id.*

The debtor argued that it incurred the obligation to remit payment to the creditor on the date of the invoice, not when the creditor actually provided the services to it. The court rejected the debtor's argument and held that the debtor did not incur a debt for the computer services until the creditor actually provided those services. *Id.* at 334. The court in *Vanguard* simply did not utilize the grace period in its analysis of when the debtor incurred the debt at issue. Accordingly, the *Vanguard* decision is inapposite to the issue of whether the Grace Period extended Bridge's obligation to remit each month's premium to UHC.

The Sixth Circuit has addressed this exact issue in *In re Advance Glove Mfg. Co.*, 761 F.2d 249 (6th Cir.1985). In *Advance Glove*, the policy at issue required the insured to pay each month's premium on the first of each month. *Id.* at 251. A Michigan statute, however, provided that

an insurance company could not cancel a policy for a period of 31 days because of the policyholder's failure to pay the premium.[4] Id. The Court held that the statutory grace period did not extend the due date for the insured to remit the monthly premium but rather only protected the policyholder from premature termination of coverage upon its default. Id. (quoting Couch on Insurance 2d § 32:133 (2d ed.1961)). Thus the debtor incurred the obligation to pay each month's premium on the due date as specified in the policy. Id.

UHC contends that the Sixth Circuit's holding in Advance Glove is contrary to Eighth Circuit precedent, citing In re Jones Truck Lines, 130 F.3d 323 (8th Cir. 1997). In Jones, the Court first noted that the general rule in the Eighth Circuit is that a debtor becomes liable on a debt for purposes of § 547(b)(2) when it receives the goods or services from the creditor and not when the creditor chooses to invoice the debtor. Id. at 329. The Court then observes that although this general rule applies when the creditor provides discrete goods or services to the debtor, that rule may not be applicable when the debtor is continuously accruing an obligation to the creditor, such as paying premiums on an insurance policy.[5] Id. at 329–30.

In situations where the debtor accrues obligations to the creditor on a continuing basis, the Court noted that there would be some difficulty in determining exactly when the creditor actually provided the good or service in question and matching the debtor's payment with the creditor's provision of any specific good or service. Id. Accordingly, the Court stated that the better approach maybe to adapt a bright line rule whereby the debtor incurred the obligation to pay the monthly premium on the date specified in the policy. Id.

The issue of whether a grace period acts to extend the time in which a debtor becomes obligated on a contract was simply not at issue in Jones or in any other Eighth Circuit opinion. Thus, there is nothing in Jones or any other Eight Circuit opinion that would preclude a finding that Bridge incurred the obligation to pay premiums on the first day of each month as required by the Policy and not upon the expiration of the Grace Period.

The Court will follow the Sixth Circuit's decision in Advance Glove and holds that the Grace Period did not extend the time in which the Policy required Bridge to remit premiums to UHC for two reasons. First, the only federal case authority on this issue supports the Sixth Circuit's position that a grace period does not extend the time in which a debtor becomes obligated to pay premiums under an insurance policy. The Eighth Circuit's only comment on this issue was in Jones. As out-

---

4. The Court notes that the grace period at issue in Advance Glove was created by statute where the Grace Period here was created by an express agreement between the parties. The Advance Glove Court's analysis, however, is still applicable to the instant case because contracts incorporate the terms of applicable statutes existing at the time the parties executed the contract and effect the rights of the parties as if it those statutory provisions were expressly part of the contract. Norfolk & Western R.R. Corp. v. Am. Train Dispatchers Assoc., 499 U.S. 117, 129–30, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991). Thus, the statutory grace period in Advance Glove was incorporated into the policy and effected the rights of both the insurance company and the policyholder just as if had it been expressly included in the policy.

5. The Court did not decide antecedent debt issue because it found that even if the transfers in question were preferential under § 547(b), the trustee could not avoid them because the debtor made them in the ordinary course of business under § 547(c)(2). Jones, 130 F.3d at 327–28.

lined above, *Jones* arguably supports a position that in the insurance context, a court should employ a bright line rule that the debtor incurs the obligation to pay the premium on the date specified in the policy. Further, UHC has not cited any authority and the Court's research has failed to uncover any case law that supports UHC's position.[6] Thus, the only federal authority on this issue supports a finding that Bridge's obligation to remit the Premium Payments arose on the due date and not upon the expiration of the Grace Period.

 Second, application of Missouri law supports a finding that the Grace Period did not extend the time in which Bridge was obligated to remit premiums to UHC under the Policy. Clearly the determination of whether a particular payment was preferential under § 547(b)(2) is a matter of federal law. However, as illustrated above, a debtor incurs a debt for purposes of § 547(b)(2) as soon as it would be liable on a claim relating to the debt. State law generally governs the substance of claims in bankruptcy. *Raleigh v. Ill. Dept. of Rev.*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *See also In re Ozark Restaurant Equip.*, 816 F.2d 1222, 1224–25 (8th Cir.1987) (noting that applicable state law governs the scope of the estate's interest in the debtor's putative property). Accordingly, courts should examine applicable state law when determining at what point a debtor became legally obligated to pay a debt. *See e.g. Virginia–Carolina Fin. Corp.*, 954 F.2d at 197–98 (applying Virginia law in determining when the debtor became liable to the creditor under a promissory note for purposes of § 547(b)(2)).

 Here, Missouri law governs the parties' rights and obligations under the Policy. (Policy pgs. 1 & 5). Under Missouri law, a grace period in an insurance contract does not delay the date the premiums are due. *Randall v. W. Life Ins. Co.*, 336 S.W.2d 125, 129 (Mo.Ct.App.1960); *Watson v. Commonwealth Life & Acc. Ins. Co.*, 17 S.W.2d 570, 571 (Mo.Ct.App.1929). Rather, the effect of the grace period is only to extend the life of the policy for the duration of the grace period. *Id.* Accordingly, under Missouri law, Bridge's obligation to remit each month's premium to UHC under the Policy arose on the due date and not upon the expiration of the Grace Period.

## CONCLUSION

Bridge's obligation to remit each month's premium to UHC under the Policy arose on the first day of each month, not upon the expiration of the Grace Period. Also, there is no factual dispute that Bridge remitted the Premium Payment to UHC after the first date of each month. Thus, Bridge's payment of the Premium Payments to UHC was on or account of an antecedent debt under § 547(b)(2). Therefore, UHC has failed to demonstrate in its motion and supporting affidavit that there are no material facts in dispute so that it is entitled to judgment as a matter of law. Accordingly, the Court will deny its Motion for Summary Judgment.

An Order consistent with this Memorandum Opinion will be entered this date.

---

**6.** The only case cited by UHC is *Vanguard. Plan Administrator*, however, is not arguing here that Bridge became legally obligated to remit the premiums to UHC on the date of invoice. Thus, as noted above, *Vanguard* is simply not relevant here.