**James A. LEWIS, Esquire, Trustee for Joseph M. Eaton Builders, Inc.**

v.

**Thomas J. and Linda M. DIETHORN, Appellants.**

**No. 89–3561.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 9, 1990.

Decided Jan. 12, 1990.

Rehearing and Rehearing In Banc Denied Feb. 13, 1990.

Lee Markovitz, Lewis and Stockey, Pittsburgh, Pa., for appellants.

Rothman Gordon Foreman & Groudine, P.C., James A. Lewis, Michael H. Syme, Pittsburgh, Pa., for Trustee, James A. Lewis.

Before GIBBONS, Chief Judge, SCIRICA, Circuit Judge and WALDMAN, District Judge *.

**OPINION OF THE COURT**

GIBBONS, Chief Judge:

In this dispute a trustee in bankruptcy has sought to exercise his powers to avoid, as a preferential transfer, the debtor's payment to settle litigation in Pennsylvania court and so to remove a *lis pendens* on certain real estate, for the sale and purchase of which he had entered into a con-

---

* Hon. Jay C. Waldman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

tract with the defendants. The trustee prevailed in bankruptcy court, and the district court affirmed. We will reverse.

## I.

Thomas J. and Linda M. Diethorn, the defendants here, entered into a contract with a developer, Joseph M. Eaton Builders, Inc. They paid $3,000 as earnest money into escrow with the real estate agent. By terms of the agreement, the Diethorns were to buy a lot in Allegheny County, Pennsylvania, and a house which Eaton was to build on it. The Diethorns were to pay a total of $182,400, and Eaton was to convey title after building the house. The Diethorns secured a mortgage commitment and in April 1986 they moved into the house. A dispute arose about the cypress wood siding of the house, the Diethorns contending that it was defective and Eaton refusing to alter it. In May 1986 the Diethorns sued in equity in Pennsylvania state court, seeking specific performance of the Agreement of Sale, and at the same time a *lis pendens* was indexed. The prospective mortgagee made the mortgage commitment contingent upon Eaton's putting $15,000 into escrow for repair of the siding, after the mortgagee's appraiser reported that it was not of workmanlike quality. Eaton did not escrow the money, and the Diethorns lost their mortgage commitment. Meantime they had paid $31,500, in round figures, of their own money to Eaton, some of it to reconstruct the siding and some for other permanent improvements to the

house. However, the sales transaction was never consummated, and in July 1986 the Diethorns moved out.

In February 1987 Eaton entered into a settlement agreement with the Diethorns, arranging for the return of their $3,000 earnest money, and paying them an additional $15,500. In return, the Diethorns agreed to discontinue their suit in Pennsylvania state court (a consent order to that effect was entered on February 26, 1987) and to lift the *lis pendens* on the property. That same month Eaton sold the property to another buyer for $205,000.

On March 3, 1987 Eaton filed for voluntary bankruptcy under chapter 7 of the Bankruptcy Code. When the trustee had been duly appointed, he filed a timely complaint against the Diethorns, to avoid the transfer as preferential under section 547 of the Bankruptcy Code and to recover the $15,500 [1] for the bankrupt's estate, thus commencing this adversary proceeding. The proceeding came to trial in the Bankruptcy Court on January 26, 1988 and on December 6, 1988 the court entered a memorandum opinion and order of judgment for the trustee. 93 B.R. 428. By order of July 12, 1989, on appeal, the U.S. District Court for the Western District of Pennsylvania affirmed.

## II.

Section 547 of the Bankruptcy Code specifies when a payment by a bankrupt debtor may be avoided by the trustee.[2]

---

1. The complaint also sought recovery of the $3,000 earnest money, which the debtor had arranged to release from escrow, but the trustee later abandoned this claim, conceding that the defendants had not breached the contract of sale. Also, the docket entry in the Pennsylvania Court of Common Pleas lists the amount of Eaton's payment to the Diethorns as $15,000, but some pleadings in this bankruptcy case set the amount of the trustee's remaining claims at $15,500; sometimes the total of those claims and the earnest money is given as $18,500. The Bankruptcy Court used the higher figure and, in its judgment order, gave recovery of $15,500 to the trustee. App. 209a; *see also* Mem. Op., Dec. 6, 1988, at 4 n. 5; App. 199a.

2. The portions of the section pertinent to this litigation read as follows:

§ 547. *Preferences*

\*     \*     \*     \*     \*     \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition …; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

The transfer of the $15,500 from Eaton to the Diethorns does not meet the statutory specifications. To be sure, it was a transfer of Eaton's property, to or for the benefit of the Diethorns, made while the debtor was presumptively insolvent and within 90 days before the filing of the petition in bankruptcy. *See* 11 U.S.C. § 547(b)(1), (3), (4) (Supp. V 1987). But it was not "for or on account of an antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2). Eaton paid the $15,500 to the Diethorns in exchange for their undertaking to terminate the lawsuit in Pennsylvania court and so to remove the *lis pendens* from the property index. What Eaton received was not the freedom from liability on an antecedent debt, but the freedom from the risk of litigation, together with the rise in the value of the property which resulted when the *lis pendens* was lifted.

Thus, the exchange also falls within the statutory exception to the trustee's avoidance powers as set out in subsection (c)(1), since it was intended by both parties "to be a contemporaneous exchange for new value ... and [was] in fact a substantially contemporaneous exchange." 11 U.S.C. § 547(c)(1). The trustee may not avoid such transfers. *Id.*

### III.

▮ We are confirmed in our holding by our finding that even if the transfer had been for an antecedent debt it would have been in satisfaction of an equitable lien, an obligation which would also have defeated the trustee's avoidance power. It would thus have been protected because it would not have been a transfer which "enables such creditor to receive more than such creditor would receive" in a chapter 7 distribution. 11 U.S.C. § 547(b)(5) (1982). "The trustee in bankruptcy is vested by operation of law only with that title which

the bankrupt had in his property as of the date he filed the petition. That title is subject to the imposition of equitable liens." *In re Czebotar*, 5 B.R. 379, 382 (Bankr.E.D.Wash.1980). It does not matter that the Pennsylvania Court of Common Pleas never imposed an equitable lien, nor does it matter that the suit in the Pennsylvania court was for specific performance. We find merely that in Pennsylvania an equitable lien would have arisen as a matter of law, and that payment on such a lien would have defeated the trustee's avoidance powers.

▮ In bankruptcy the existence and power of liens is controlled by state law, unless its application would frustrate a federal policy. *In re Taddeo*, 9 B.R. 299, 305 (Bankr.E.D.N.Y.1981). Pennsylvania law is applicable when the property in dispute is in Pennsylvania. *See In re Computer Room, Inc.*, 24 B.R. 732, 736 (Bankr. N.D. Ala.1982). Pennsylvania law recognizes an equitable lien. The parties stipulated that the property increased in value by $22,600 as the result of the $31,500 which the Diethorns paid to Eaton. Transcript of Hearing, Sept. 30, 1988; App. 128a–129a. This payment was made while the Diethorns occupied the house under a contract of sale and were thus equitable owners. *See Long John Silvers, Inc. v. Fiore*, 255 Pa.Super. 183, 386 A.2d 569, 572 (1978); *McCannon v. Marston*, 679 F.2d 13, 15 (3d Cir.1982). The contract failed of performance because of what Eaton, not the Diethorns, did and did not do, and because of the resulting withdrawal of the mortgage commitment. If Eaton were allowed to keep the benefits of the Diethorns' investment, or if the benefits were to return to the estate in bankruptcy, he (or the estate) would enjoy just the sort of unjust enrichment which Pennsylvania's law of the equitable lien forbids. *See* Restatement of Restitution § 161 (1937) (Equitable Lien). We are therefore convinced that under the circumstances of

---

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
(c) The trustee may not avoid under this section a transfer—
(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange. . . .
11 U.S.C. § 547(b), (c) (Supp. V 1987).

this case, an equitable lien would have arisen.

In cases of this kind, the trustee in bankruptcy possesses only those powers of avoidance which a hypothetical judgment lien creditor would have under state law on the date the bankruptcy petition was filed. 11 U.S.C. § 544. In Pennsylvania a judgment lien creditor of Eaton on that date could not have defeated the claims of a holder of an equitable lien against the property in Allegheny County. *See Gladowski v. Felczak*, 346 Pa. 660, 31 A.2d 718 (1943) (holder of equitable lien on real property has right of subrogation to judgment lien); *Williams v. Benzing*, 53 Pa. D. & C. 559, 562 (Philadelphia County Ct.1945) (equitable lienholder's rights subrogated to other lien rights when equitable lien is on real property and claims of other lienholders have been satisfied by equitable lienholder). Therefore, if the transfer had not occurred and a chapter 7 distribution had been made instead, 11 U.S.C. § 547(b)(5), the Diethorns would not have joined the other unsecured creditors but would have been paid first, in satisfaction of the lien, from the proceeds of the sale of the property. They would have received no less than they have in fact received.[3] No federally enacted policy would be frustrated or debilitated by this result, so the application of Pennsylvania's law of the equitable lien controls, dictating judgment for the defendants. *In re Taddeo*, 9 B.R. 299, 305 (Bankr.E.D.N.Y.1981). Thus in general, the principles we applied in *In re Gebco Investment Corp.*, 641 F.2d 143 (3d Cir. 1981), control the question of the equitable lien in this case as well.

## IV.

The judgment will, therefore, be reversed.