In re BIOPLASTY, INC., Debtor.

BIOPLASTY, INC., Plaintiff,

v.

FIRST TRUST NATIONAL ASSOCIATION; Opperman, Heins & Paquin; Wolf, Popper, Ross, Wolf & Jones; and Savett Frutkin Podell & Ryan, P.C., Defendants.

Bankruptcy No. 4–93–2600.
Adv. No. 4–93–154.

United States Bankruptcy Court,
D. Minnesota.

June 11, 1993.

---

**1.** The IRS has pursuant to an order entered in December of 1991 agreed to turn this sum over to the trustee.

Richard D. Holper, Garrett Vail, Sandra Ferrian, Christoffel, Elliott & Holper, P.A., St. Paul, MN, for plaintiff.

Stacey L. Mills, Richard Lockridge, Opperman, Heins & Paquin, Minneapolis, MN, for defendant.

Charles Zimmerman, Zimmerman & Reed, Minneapolis, MN, for tort claimants.

## MEMORANDUM ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

### UNDISPUTED FACTS

On August 1, 1991, two lawsuits were filed in the United States District Court for the District of Minnesota as class actions on behalf of individuals who purchased Bioplasty stock on the open market during the period August 30, 1990 through July 30, 1991. The two actions were consolidated with a third class action, filed in October, 1991. Bioplasty and certain past and present officers and directors were named as defendants in the consolidated class action. The class action asserted violations of sections 10(b) and 20 of the Securities and Exchange Act of 1934, violations of Securities and Exchange Commission Rule 10b–5, and common law fraud, misrepresentation, and fraudulent transfers. The factual allegations underlying the class action were that Bioplasty and certain officers and directors engaged in a scheme to artificially inflate the price of Bioplasty common stock via the issuance of a series of materially misleading statements about Bioplasty's products and business.

On February 19, 1993, after extensive discovery in the class action, the parties

executed a settlement agreement. Paragraph V of the settlement agreement provides:

> The defendants have concluded that the further conduct of the litigation against them would be protracted and expensive for all parties and that settlement on the terms provided for herein is desirable. The defendants have also taken into account the uncertainty and the risk of the outcome in any litigation, especially a complex case such as this, and the delays inherent in such litigation. Substantial amounts of time, energy and resources of these defendants have been and, unless this settlement is approved, will continue to be devoted to the defense of the claims asserted in this action. The defendants have, therefore, determined that it is desirable and beneficial to them that this litigation is settled in the manner and upon the terms and conditions set forth herein.

Paragraph VI contains a general denial of wrongdoing on the part of the defendants, and paragraph VII of the settlement agreement requires the class plaintiffs to file proofs of claims and release the defendants, and dismisses the class action with prejudice, barring any future litigation based on the settled claims.

The settlement agreement provided for the creation of a settlement fund in the amount of $1,375,000 for the benefit of the class plaintiffs. The agreement was preliminarily approved by the District Court, and First Trust, N.A. was engaged to function as escrow agent for the settlement fund. Per the agreement, Bioplasty transferred $1,375,000 to the escrow account in several installments between the February 19, 1993 date the settlement agreement was executed, and the April 29, 1993 date the petition was filed in this chapter 11 case.

There is no dispute as to the following circumstances surrounding the transfers to the escrow account: (1) Bioplasty was insolvent at the time the transfers were made; (2) the transfers were made within 90 days of the date the petition was filed in this chapter 11 case; (3) the transfers were made to or for the benefit of creditors of Bioplasty, namely the class plaintiffs and the class action defendants other than Bioplasty; and (4) such creditors received more than they would receive pursuant to any distribution under chapter 7 of the Bankruptcy Code.

Bioplasty filed this adversary proceeding seeking to recover the funds transferred to the escrow account on alternative grounds. Bioplasty asserts that the transfer can be avoided as a preference under section 547 of the Bankruptcy Code, or alternatively that the funds are property of the estate, subject to turnover under sections 542 and 543 of the Bankruptcy Code. Both Bioplasty and the defendants have moved for summary judgment on both grounds.

## DISCUSSION

▮ Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056. Federal Rule 56 provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Section 547(b) of the Bankruptcy Code provides that a debtor-in-possession can avoid a transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). A transfer is unavoidable, notwithstanding the fact that it meets the preference requirements under section 547(b), to the extent that the transfer was:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1). At the June 8 hearing on these motions, the defendants conceded that the record in this case establishes all of the elements of section 547(b) except for the requirement that the transfer be made for or on account of an antecedent debt. Defendants also argued that even if the transfer was made on account of an antecedent debt, the transfer was intended to be a contemporaneous exchange for new value, and was in fact a contemporaneous exchange. I conclude that the record before me establishes that the funds were transferred to the escrow account on account of an antecedent debt, and that the parties did not intend the transfer to be a contemporaneous exchange for new value, nor was the transfer in fact a contemporaneous exchange.

In *Energy Co-op, Inc. v. SOCAP Int'l, Ltd.*, 832 F.2d 997 (7th Cir.1987), the Seventh Circuit Court of Appeals concluded that a transfer was made on account of an antecedent debt where the debtor transferred funds to the defendant "as compensation for" the debtor's prior repudiation of a contract. The defendant never sued the debtor for the repudiation, but rather advised the debtor that it would hold the debtor liable for the repudiation. The court found that the repudiation gave the defendant a right to pursue damages, and that such right constituted a "debt" as defined by the Bankruptcy Code, notwithstanding the fact that any ultimate recovery was contingent upon the defendant's successful pursuit of its remedy. *Energy Co-op*, 832 F.2d at 1002.

Similarly, the transfer in the present case was made on account of Bioplasty's antecedent debt to the class action plaintiffs created by the alleged actions that gave rise to the District Court class action. The Bankruptcy Code defines a debt as a "liability on a claim," and defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. §§ 101(12), 101(5)(A). The actions that gave rise to the class action suit gave the class action plaintiffs a right to pursue damages against Bioplasty. Even though any ultimate right to payment was disputed, contingent, unliquidated, and not reduced to judgment, such right still constitutes a claim under the Bankruptcy Code, and "[w]here a claim exists, so does a debt." *Energy Co-op*, 832 F.2d at 1002.

The defendants advance several arguments attempting to persuade me that the payment into escrow was not made on account of an antecedent debt. *First*, the defendants urge me to distinguish *Energy Co-op* on the grounds that it dealt with a

contract breach where the debtor's liability for breach of the contract was clearly established. I am not persuaded by this argument. The Seventh Circuit did not expressly require that the debtor's liability must be established in order for a debt to exist, and I read no such implicit holding into the case. The defendants attempt to bolster this argument by pointing to the Bankruptcy Code's definition of "debt." Since a debt is defined as a *liability* on a claim, the defendants argue that while a claim itself can be disputed, contingent, or unliquidated, there can only be a debt where liability is established. I am still not persuaded. As the Seventh Circuit stated in *Energy Co-op*, where a claim exists, so does a debt. Although the debtor's liability on the class action plaintiffs' claims was disputed, contingent, or unliquidated, such liability still constitutes a debt.

*Second,* the defendants argue that the transfer was made, not on account of such antecedent debt, but rather to eliminate the costs and risks associated with litigation. The defendants rely on *Lewis v. Diethorn,* 893 F.2d 648, 650 (3d Cir.1990). Although *Diethorn* did hold that the settlement payments in the case before it were made in consideration for the termination of the lawsuit and release of a *lis pendens,* I am not persuaded by the Third Circuit's holding. The opinion contains no analysis whatsoever, and simply makes the conclusory statement that the payments were made for one reason rather than another. *Diethorn,* 893 F.2d at 650.

Even if I could be convinced that *Diethorn* reached the proper conclusion on the facts before it, I would distinguish it from the case before me today. Although the settlement agreement states that the debtor considered the expenses of litigation in settling, and that the debtor specifically denies any wrongdoing, I find that the most significant factor in settling the class action suit was the risk that the debtor would be found liable. As paragraph V of the settlement agreement states, the debtor clearly considered "the uncertainty and the risk of the outcome in any litigation, especially a complex case such as this." Certainly the debtor's driving concern in settling the class action suit, as in any large commercial dispute, was the risk of liability. The settlement payments were made in light of such risk, and therefore were on account of the antecedent debt.

■ *Third,* the defendants urge me to segregate a portion of the escrowed funds because such advances were made on account of antecedent debts of the former officers and directors of the debtors, rather than antecedent debts of the debtor. I am not persuaded by this argument either. As directors and officers of the debtor, such individuals would likely be entitled to indemnification, and certainly such risk was considered by the debtor in reaching the settlement agreement. Given the definition of "debt" employed by the Bankruptcy Code, any such transfers would still be on account of an antecedent debt owed by the debtor.

■ The defendants also argue that even if the funds were transferred to escrow on account of an antecedent debt, the debtor is still not entitled to summary judgment because the transfer was intended to be a contemporaneous exchange for new value, and was in fact a contemporaneous exchange. The defendants argue that such new value comes in the form of the dismissal of the class action suit, and the release of an injunction previously imposed in the class action.

However, as the *Energy Co-op* court observed, the definition of "new value" provided by section 547(a)(2) is *exclusive. Energy Co-op,* 832 F.2d at 1003. Section 547(a)(2) provides as follows:

> "new value" *means* money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

11 U.S.C. § 547(a)(2). The release and dismissal in the present case simply do not constitute new value under section 547.

*See Energy Co-op,* 832 F.2d at 1003. Furthermore, as the debtor points out, the transcript of the hearing on preliminary approval of the settlement agreement establishes that the release of the injunction was more of an *afterthought* to the settlement agreement, rather than being *intended* as a contemporaneous exchange for the settlement payments.

Since I have decided that the funds paid into escrow were transferred on account of an antecedent debt, and that the contemporaneous exchange for new value defense is inapplicable, I need not reach the question of whether the escrow fund is subject to turnover under sections 542 and 543 as property of the estate.

I will also refrain from addressing the issues raised at the hearing with regard to whether charges made against the escrow account to pay for administration of the class action and pay First Trust for acting as escrow agent should not be avoided as part of the preferential transfer. Further, I need not deal with the issue of whether the funds in the escrow account must be immediately returned to the debtor, given their investment posture in fixed term investments. Such issues were not adequately briefed prior to the June 8 hearing. Rather than address issues the parties may be able to resolve, given this court's current decision, I will enter judgment for the full amount of the existing balance of the escrowed funds. The parties may decide whether they wish to move for modification of this order solely as it relates to the escrow fees and class action notice costs.

The funds transferred by the debtor into the escrow account pursuant to the settlement agreement were transferred for or on account of an antecedent debt of the debtor. The transfer was not intended as a contemporaneous exchange for new value, nor was it in fact a contemporaneous exchange. The transfer of such funds is an avoidable preference and the remaining balance in the escrow fund should be returned to the debtor.

### ORDER FOR JUDGMENT

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. The plaintiff's motion for summary judgment is GRANTED. The plaintiff shall take judgment against the defendants for the remaining balance in the escrow fund;

2. The defendants' motion for summary judgment is DENIED; and

3. The debtor's motion in the main case (BKY 4–93–2600) for approval of rejection of the settlement agreement as an executory contract is MOOT, and an appropriate order of even date with this order will be entered in such case.

LET JUDGMENT BE ENTERED ACCORDINGLY.