In re BRIDGE INFORMATION SYSTEMS, INC., Debtor.

Scott P. Peltz, Plan Administrator, Plaintiff,

v.

Edward C. Vancil, Inc., Defendant.

Bankruptcy No. 01–41593–293.
Adversary No. 03–4044–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Nov. 15, 2003.

Gregory D. Willard, Jennifer A. Merlo, Bryan Cave, St. Louis, MO, Thomas J. Moloney, New York City, for Debtor.

David B. Goroff, Mark L. Prager, Michael J. Small, Peter E. Pinnow, Foley and Lardner, Chicago, IL, Michael A. Becker, Spencer, Fane, Britt & Browne, Clayton, MO, for Creditor Committee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

Scott Peltz, as Plan Administrator [1] for the estate of Bridge Information Systems,

---

1. Pursuant to the Joint Plan of Liquidation, confirmed by this Court on February 13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under § 547 on behalf of Bridge's estate.

Inc. ("Bridge"), brought this adversary proceeding against Edward C. Vancil, Inc. ("Vancil"). Plan Administrator seeks to avoid a $46,176.77 payment that Bridge made to Vancil under a settlement agreement as a preferential transfers under 11 U.S.C. § 547(b).

The case is before the Court on Vancil's Motion to Renew its Motion for Summary Judgment. Vancil argues that Bridge did not make the challenged payment on account of an antecedent debt under § 547(b)(2) because Bridge remitted the payment to it simultaneously with the parties' execution of the settlement agreement. Vancil also contends that it is entitled to judgment as a matter of law under either §§ 547(c)(1) or (c)(4) because it provided new value to Bridge either contemporaneously with or subsequent to Bridge transferring the challenged payment to it. The Court disagrees and will deny Vancil's motion.

## *JURISDICTION AND VENUE*

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

## *FACTUAL AND PROCEDURAL BACK-GROUND*

Bridge and Vancil entered into a three year lease agreement on February 18, 1994 (the "Lease Agreement") for office space Bridge owned at 700 Office Parkway in St. Louis County (the "Real Property"). (Lease Agreement ¶¶ 1–3). Bridge and Vancil renewed the Lease Agreement for an additional three years on June 1, 1997 (the "Lease Extension").[2] Under the terms of the Lease Extension, Vancil had the option to renew the lease for two additional three year terms. (Lease Extension ¶ 4). Also, the Lease Extension provided that if Vancil exercised its option to extend the lease, the new rent would be the then current rental rate that Bridge charged for office space at the Real Property at the time Vancil exercised the option (the "Market Rate"). (Lease Extension ¶ 4).

Vancil notified Bridge of its intent to exercise its option to renew the Lease Extension for an additional three year period on December 15, 1999. (Exhibit C to Suggestions in Support of Summary Judgment Motion). Bridge quoted Vancil a Market Rate of $30 per square foot. (Replay to Summary Judgment Motion ¶ 5). Bridge and Vancil were unable to agree upon the Market Rate and Bridge sent notice to Vancil by a letter dated May 19, 2000 that Vancil's lease would expire on May 31, 2000 (the "Termination Letter"). (Exhibit D to Suggestions in Support of Summary Judgment Motion).

Vancil filed a declaratory judgment action in the Circuit Court of St. Louis County on May 31, 2000 (the "Declaratory Judgment Action"). Vancil requested in the Declaratory Judgment Action that the court declare the rights of the parties with respect to the Real Property, award Vancil a full refund for any overpayment of rent during the pendency of the Declaratory Judgment Action and award Vancil its attorneys fees in prosecuting the Declaratory Judgment Action. (Declaratory Judgment Action ¶¶ 20–23).

---

2. The Lease Agreement and Lease Extension was executed by Vancil and Bridge's predecessor in interest to the Real Property, Scott Properties. Bridge purchased the Real Property sometime after the execution of the Lease Extension but before Vancil's notification of its intent to exercise its option to extend the lease. (Summary Judgment Motion ¶ 2.c.; Response to Summary Judgment Motion ¶ 3).

Bridge responded to the Declaratory Judgment Action by filing an unlawful detainer action on June 30, 2000 in the Associate Circuit Court of St. Louis County (the "Unlawful Detainer Action"). Bridge alleged in the Unlawful Detainer Action that because it and Vancil were unable to agree upon a Market Rate, the Lease Extension terminated on May 31, 2000. (Unlawful Detainer Action ¶ 10). Thus, Bridge maintained that Vancil had no right to occupy the Real Property after May 31, 2000 and therefore Vancil was obligated to pay 200% of the rent while occupying the Real Property as provided Paragraph 9 of the Lease Agreement. (Unlawful Detainer Action ¶ 13).

The parties settled both the Declaratory Judgment Action and the Unlawful Detainer Action in a settlement agreement dated December 28, 2000 (the "Settlement Agreement"). Under the Settlement Agreement, Vancil was allowed to occupy the Real Property until February 28, 2001. (Settlement Agreement ¶ 5). Also, the Settlement Agreement provided that Bridge would remit $61,176.77 to Vancil in exchange for Vancil dismissing the Declaratory Judgment Action. (Settlement Agreement ¶ 3). Further, Bridge was to pay the $61,176.77 in two installments, $46,176.66 upon the execution of the Settlement Agreement and the remaining $15,000 upon Vancil vacating the Real Property. (Settlement Agreement ¶ 3).

Bridge made the first $46,176.66 payment to Vancil as required in the Settlement Agreement (the "Alleged Preference Payment") upon the execution of the Settlement Agreement. (Summary Judgment Motion ¶ 2.g; Response to Summary Judgment ¶ 14). Bridge filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. Vancil vacated the Real Property as required by the Settlement Agreement on February 25, 2001. (Affidavit of Edward C. Vancil ¶ 10). Bridge, however, did not make the $15,000 payment, which arose post-petition.[3] (Vancil Affidavit ¶ 11; Response to Summary Judgment Motion ¶ 16).

Plan Administrator filed this instant adversary complaint against Vancil, attempting to avoid the Alleged Preference Payment as a preferential transfer under § 547(b) and to recover the payment under § 550(a)(1). Vancil filed a Motion for Summary Judgment on April 14, 2003.

This Court denied Vancil's Motion for Summary Judgment in an order dated July 21, 2003 because discovery relating to the substantive issues in Vancil's motion was still outstanding but gave leave to Vancil to renew its motion upon completing discovery. Vancil filed this present motion after providing Plan Administrator with all the information and documents in its possession that Plan Administrator had requested in his discovery requests.

Vancil advances three reasons why it is entitled to Summary Judgment. First, Vancil maintains that because Bridge made the Alleged Preference Payment upon the execution of the Settlement Agreement, the transfer was not on account of an antecedent debt under § 547(b)(2). Second, Vancil argues that because Bridge made the Alleged Preference Payment to it contemporaneously with it providing Bridge with a release from liability on the Lease Extension, it is entitled to judgment as a matter of law under the contemporaneous new value defense contained § 547(c)(1). Finally, Van-

---

**3.** The Court notes that Vancil has filed a claim against Bridge's estate for the second $15,000 installment.

cil asserts that because it vacated the premises as required in the Settlement Agreement, it provided new value to Bridge subsequent to Bridge making the Alleged Preferential Transfer and therefore it is entitled to judgment under the subsequent new value defense of § 547(c)(4). The Court will deny Vancil's motion for the reasons discussed below.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the record viewed in the light most favorable to the non-movant demonstrates that there are no material facts in dispute so that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Evergreen Inv. v. FCL Graphics, Inc.*, 334 F.3d 750, 752 (8th Cir.2003). In reviewing a motion for summary judgment, the court must review the facts and inferences from those facts in the lights most favorable to the non-movant. *Oldham v. West*, 47 F.3d 985, 988 (8th Cir.1995).

### B. The Elements of Plan Administrator's Preference Action

Section 547(b) states that a trustee or debtor-in-possession may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

■ Plan Administrator, as the party seeking to avoid the Alleged Preference Payment, bears the burden of establishing each element under § 547(b) by a preponderance of the evidence. § 547(g); *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)* 247 B.R. 463, 466 (8th Cir. BAP 2000). Vancil, however, has the burden of proof concerning its affirmative defenses under § 547(c). *In re Omniplex Communications Group*, 297 B.R. 573, 576 (Bankr. E.D.Mo.2003).

### C. Bridge made the Alleged Preference Payment for or on account of an antecedent debt.

Vancil first contends that there is no genuine issue of material fact that Bridge did not make the Alleged Preference Payment for or on account of an antecedent debt as required by 11 U.S.C. § 547(b)(2). The Court finds, however, that Bridge incurred a debt to Vancil when it sent the Termination Letter to Vancil on May 19, 2000. Therefore, Bridge did remit the Alleged Preference Payment to Vancil for or on account of an antecedent debt under § 547(b)(2).

■ A debt is antecedent for purposes of § 547(b)(2) if it is incurred prior to the debtor's alleged preferential transfer. *Harrah's Tunica Corp. v. Meeks (In re Armstrong)*, 291 F.3d 517, 522 (8th Cir. 2002). Although the Code does not define when the debtor incurs a debt, it does define a "debt" as a liability on a claim. 11 U.S.C. § 101(12). Accordingly, the concept of a debt and a claim are coextensive

under the Code and a debtor incurs a debt to the creditor for purposes of § 547(b)(2) as soon as the creditor would have had a claim against the debtor's estate. *Energy Coop., Inc. v. SOCAP Int'l, Ltd. (In re Energy Coop., Inc.),* 832 F.2d 997, 1001 (7th Cir.1987).

▮ Here, there is no dispute that Bridge remitted the Alleged Preference Payment to Vancil upon the parties' execution of the Settlement Agreement. Therefore, the key to the analysis here is to determine whether Vancil would have had a claim against Bridge's estate prior to the parties' execution of the Settlement Agreement. Because the Code's definition of a claim includes even remote and contingent legal obligations of the debtor, Vancil would have had a claim against Bridge prior to the parties' execution of the settlement agreement.

Section 101(5) defines a claim as either: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

The text of the statute clearly indicates that Congress intended to broadly define what constitutes a "claim" under the Code. Also, the legislative history of § 101(5) indicates that this broad definition includes "all legal obligations of the debtor, no matter how remote or contingent". *Id.* (*quot-ing* S.Rep. No. 95–989 at 22 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5808; H.R.Rep. No. 95–595 at 180 (1978), U.S.Code Cong. & Admin. News 1978, 5963, 6141). Thus, Bridge incurred a debt to Vancil as soon as Bridge had a legal obligation to Vancil, even if that obligation was remote and contingent.

Vancil argues that Bridge had no legal obligation to it until the parties executed the Settlement Agreement. This argument, however, fails because it does not comport with the Code's broad definition of what constitutes a "claim". Rather, because a claim under the Code includes the debtor's contingent and remote legal obligations, the vast majority of courts have held that a debtor incurs a debt as soon as it commits the actions that give rise to even the potential of litigation against the debtor. *See Energy Coop.,* 832 F.2d at 1002; *Upstairs Gallery, Inc. v. Macklowe West Dev. Co. (In re Upstairs Gallery),* 167 B.R. 915, 918–19 (9th Cir. BAP 1994); *Bioplasty, Inc. v. First Trust Nat'l Assoc. (In re Bioplasty),* 155 B.R. 495, 498 (Bankr.D.Minn.1993).

Vancil relies heavily on the Third Circuit's decision in *Lewis v. Diethorn,* 893 F.2d 648 (3d Cir.) *cert. denied* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990) in arguing that the Alleged Preference Payment was not for or on account of an antecedent debt.[4] In *Lewis,* the Third Circuit did hold that a debtor does not make a transfer on account of an antecedent under § 547(b)(2) when it makes the transfer simultaneously with executing an agreement that settles underlying litigation between. *Id.* at 650. The Court also focused, however, on the fact that the creditor also agreed to remove a *lis pendens* against real estate owned by the

---

4. Vancil contends that *Lewis* was decided by the Seventh Circuit and therefore must be reconciled with the *Energy Coop.* decision cited above. *Lewis,* however, is clearly an opinion issued by the Third Circuit.

debtor. *Id.* Thus, at least one bankruptcy court within the Third Circuit has held that *Lewis* does not apply when the debtor makes a payment to a creditor only in exchange for the creditor releasing it from liability in pending litigation. *Lease–A–Fleet v. Wolk (In re Lease–A–Fleet),* 151 B.R. 341, 352 (Bankr.E.D.Pa.1993).

Even assuming that *Lewis* does apply when the debtor makes the challenged payment only in exchange for the creditor releasing it from potential liability, the Court will not follow the decision for two reasons.

First, the *Lewis* opinion is inconsistent with the Code's broad definitions of both a claim and a debt. As another bankruptcy court within the Eighth Circuit has observed, the *Lewis* opinion "contains no analysis whatsoever, and simply makes the conclusory statement that the payments were made for one reason rather than another." *Bioplasty,* 155 B.R. at 499. There is simply no analysis in *Lewis* as to why a debtor does not incur a debt until the parties' execute a settlement agreement when the Code's definition of a debt includes the debtor's remote and contingent obligations.

■ Second, the *Lewis* Court's holding is inconsistent with the policy objectives underlying § 547(b). The primary objective underlying the preference statute is to promote an equitable distribution of the debtor's assets among its creditors. *Energy Coop.,* 832 F.2d at 1002. Under the *Lewis* approach, creditors would have an incentive to initiate litigation against a financially struggling entity in hopes of extracting a settlement payment prior to bankruptcy, which would be shielded from avoidance under § 547(b). This result is clearly at odds with the equitable distribution policy objective underlying § 547(b).

■ Vancil alternatively contends that it did not have a claim against Bridge until the parties' executed the Settlement Agreement because the primary relief it sought in the Declaratory Judgment Action was equitable in nature. It is true that a creditor does not have a claim against the debtor if the only possible remedy it has against the debtor is equitable in nature and cannot be reduced to a right of payment. § 101(5)(B); *In re Bush,* 273 B.R. 625, 628 (Bankr.S.D.Cal.2002). Here, however, Vancil did seek payment from Bridge in the Declaratory Judgment Action. Specifically, Vancil sought the return of any overpayment it may have made to Bridge and its attorney's fee in prosecuting the Declaratory Judgment Action. (Declaratory Judgment Action ¶¶ 22–23). Thus, the relief Vancil requested in the Declaratory Judgment Action was certainly a claim against Bridge under § 101(5).

Vancil attempts to counter by arguing that the most it overpaid Bridge under the Lease Extension was $1,551. This argument fails for two reasons. First, Vancil's attorney made this statement in Vancil's Reply to Plan Administrator's Response to the Motion for Summary Judgment. Because that statement is not based on the first hand knowledge of Vancil's attorney, it is clearly inadmissible hearsay that Vancil may not use to support its motion for summary judgment under Rule 56(e). *Erickson v. Farmland Indus., Inc.,* 271 F.3d 718, 728–29 (8th Cir.2001). Secondly, this argument simply ignores the potential liability that Bridge faced with respect to paying Vancil's attorney's fees, which Vancil requested in the Declaratory Judgement Action.

In conclusion, Bridge incurred a debt to Vancil on May 18, 2000 when Bridge sent the Termination Letter. Also, Bridge made the Alleged Preference Payment to Vancil on December 28, 2000. Viewing

this record in the light most favorable to Plan Administrator, the Court finds that Vancil is not entitled to summary judgment on the antecedent debt issue under § 547(b)(2).

*D. Vancil is not entitled to summary judgment on its contemporaneous new value defense under § 547(c)(1).*

■ Vancil next argues that it is entitled to summary judgment on its contemporaneous new value defense under § 547(c)(1). Section 547(c)(1) provides that a debtor-in-possession may not avoid a transfer even if it was preferential under § 547(b) if the transfer was: "(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange." Also, § 547(a)(2) defines new value as "money or money's worth in goods, services, or new credit...". Thus, § 547(a)(2) requires that item that the creditor transferred to the debtor to have some pecuniary value that measurably enhances the bankruptcy estate for it to be "new value". *Energy Coop.*, 832 F.2d at 997.

■ Here, Vancil argues that it provided new value to Bridge contemporaneously with Bridge's transfer of the Alleged Preference Payment in the form of releasing Bridge from any potential liability on the lease. As with the antecedent debt issue outlined above, Vancil contends that the Third Circuit's decision in *Lewis* supports its argument that its release of Bridge constituted new value. As discussed above, however, the creditor in *Lewis* not only provided the debtor was a release of liability but also removed a *lis pendens* from the debtor's real property, which increased the value of the debtor's estate. *Lewis,* 893 F.2d at 650.

Here, however, Vancil only provided Bridge with a release from liability contemporaneously with Bridge's transfer of the Alleged Preference Payment. As the Seventh Circuit observed, because a payment is preferential only if the debtor is insolvent at the time of the transfer, the debtor is almost certainly judgment proof. *Energy Coop.*, 832 F.2d at 1003–04. Accordingly, a release of the debtor from potential liability on a judgment is worthless to the bankruptcy estate. *Id.* Thus, merely providing the debtor with a release from liability does not enhance the bankruptcy estate and therefore does not constitute new value under § 547(a)(2). *Id.; Peltz v. New Age Consulting Serv., Inc.,* 279 B.R. 99, 104 (Bankr.D.Del.2002); *Bioplasty,* 155 B.R. at 499–500; *Durant's Rental Center v. United Truck Leasing (In re Durant's Rental Center),* 116 B.R. 362, 365 (Bankr.D.Conn.1990). Accordingly, Vancil is not entitled to summary judgment on its contemporaneous new value defense under § 547(c)(1).

*E. Vancil is not entitled to summary judgment on its subsequent new value defense under § 547(c)(4).*

■ Vancil's finial argument is that it is entitled to summary judgment on its subsequent new value defense under § 547(c)(4). Section 547(c)(4) provides in relevant part that a debtor-in-possession may not avoid a preferential transfer to a creditor if after the transfer the creditor "gave new value to or for the benefit of the debtor." Vancil argues that it provided new value to Bridge subsequent to Bridge's payment of the Alleged Preference Payment by vacating the Real Property at a time when the rent it was paying was substantially below the fair market rental value. The Court rejects this argument for two reasons.

■ First, it is uncertain that Vancil's vacation of the Real Property constitutes

"new value" under § 547(a)(2). Vancil was obligated to vacate the Real Property on February 28, 2001 under Paragraph 5 of the Settlement Agreement. Thus, Vancil was contractually obligated to vacate the Real Property at the time it left. Accordingly, it appears that Vancil's vacation of the Real Property was in satisfaction of a pre-existing obligation, which by definition is not "new value" under § 547(a)(2). *Mann v. Mo. Gen. Ins. Agency (In re St. Louis Globe Democrat)*, 99 B.R. 946, 949 (Bankr.E.D.Mo.1989).

Even assuming that Vancil's vacation of the Real Property is new value under § 547(a)(2), Vancil would still not be entitled to summary judgment because it failed to offer any evidence as to the measure of that new value. Because both §§ 547(c)(1) and (c)(4) are affirmative defenses to a preference action, the creditor must prove with specificity the quantum of the new value it provided to the debtor. *Official Unsecured Creditors' Comm. v. Airport Aviation Serv., Inc. (In re Arrow Air, Inc.)*, 940 F.2d 1463, 1466 (11th Cir. 1991). Vancil, however, has offered absolutely no evidence as to the measure of the new value it allegedly provided to Bridge when it vacated the Real Property.

Because Vancil was contractually obligated to vacate the Real Property and because Vancil failed to produce any evidence as to the measure of the new value it allegedly provided to Bridge when it vacated the Real Property, there are clearly material issues of fact in dispute for trial concerning Vancil's subsequent new value defense under § 547(c)(4). Accordingly, Vancil is not entitled to judgment as a matter of law on this issue.

### CONCLUSION

Bridge incurred a debt to Vancil on May 18, 2000 when it sent the Termination Letter to Vancil. Also, Bridge remitted the Alleged Preference Payment to Vancil on December 28, 2000. Accordingly, Bridge made the Alleged Preference Payment for or on account of antecedent debt under § 547(b)(2).

Also, Vancil's release of Bridge from liability as provided in the Settlement Agreement does not constitute new value under § 547(a)(2). Finally, Vancil has failed to produce any evidence as to the measure of the purported new value it provided to Bridge when it vacated the Real Property. Accordingly, Vancil is not entitled to judgment as a matter of law on either its contemporaneous new value or subsequent new value defenses under §§ 547(c)(1) and (c)(4). Therefore, the Court will deny Vancil's Motion to Renew Motion for Summary Judgment.

An Order consistent with this Memorandum Opinion will be entered this date.