**In re BRIDGE INFORMATION SYSTEMS, INC., et al., Debtors.**

**Scott Peltz, Plan Administrator, Plaintiff,**

v.

**Gulfcoast Workstation Group, Defendant.**

**Bankruptcy No. 01–41593–293. Adversary No. 03–4360–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

July 2, 2004.

Gregory D. Willard, Jennifer A. Merlo, Bryan Cave, St. Louis, MO, Thomas J. Moloney, New York, NY, for Debtor.

David B. Goroff, Mark L. Prager, Michael J. Small, Peter E. Pinnow, Foley & Lardner, Chicago, IL, Michael A. Becker, Spencer Fane Britt & Browne, Clayton, MO, for Creditor Committee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

Scott Peltz, Plan Administrator ("Plan Administrator") for the estate of Reorganized Debtor Bridge Information Systems ("Bridge"), filed this instant adversary complaint against Gulfcoast Workstation Group ("Gulfcoast") seeking to recover payments that Bridge made to Gulfcoast totaling $2,155,105.80 as preferential transfers under 11 U.S.C. § 547(b).[1] Gulfcoast argues that even if the payments were preferential, Plan Administrator may not avoid them under the "ordinary course of business" defense contained in 11 U.S.C. § 547(c)(2).

The stipulated facts and the uncontroverted evidence introduced at trial establishes that the payments in question were preferential under § 547(b). Also, Gulfcoast failed to demonstrate at trial that Bridge remitted the payments in question to it under terms prevailing within the relevant industry. Thus, Gulfcoast failed to meet its burden of proof under § 547(c)(2)(C) and the Court will enter judgment in favor of Plan Administrator.

## JURISDICTION AND VENUE

This Court has jurisdiction over the parties and subject matter of this proceeding

---

1. Pursuant to Debtors' Joint Plan of Liquidation, confirmed by this Court on February 13, 2002, Plan Administrator has the exclusive authority to prosecute all claims under § 547 on behalf of the various Debtors' estates.

under 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which the Court may hear and determine. Venue is proper in this District under 28 U.S.C. § 1409(a).

*FACTUAL FINDINGS*

Bridge and Gulfcoast entered into an agreement whereby Gulfcoast agreed to resell computer component parts and systems to Bridge (the "Sales Agreement"). The terms of the Sales Agreement required Bridge to remit payment on each invoice within thirty days of its receipt of the invoice. The Sales Agreement also mandated that Bridge remit payment directly to Gulfcoast's bank, European American Bank. The Sales Agreement further allowed Bridge to match each payment with any outstanding invoice.

Bridge filed its petition for relief under Chapter 11 of the United States Bankruptcy Code on February 15, 2001. During the ninety day preference period Bridge made eight payment to Gulfcoast totaling $2,155,105.80 (the "Challenged Payments"). Plan Administrator filed this adversary complaint attempting to avoid the Challenged Payments as preferential transfers under 11 U.S.C. § 547(b) and collect those payments from Gulfcoast under 11 U.S.C. § 550(a)(1). Gulfcoast countered by arguing that even if the Challenged Payments were preferential under § 547(b), Plan Administrator could not avoid those payments under the ordinary course of business defense contained in § 547(c)(2).[2]

Prior to trial, the parties stipulated that Bridge was insolvent at the time it remitted each of the Challenged Payments to Gulfcoast. At trial Gulfcoast produced a document which contained the date of each invoice it sent to Bridge and Bridge's corresponding payment to Gulfcoast on that invoice (the "Payment Summary"). The Payment Summary reflects that: (1) Bridge remitted each of the Challenged Payments after it had received the computer product and the corresponding invoice; (2) that Bridge made each of the Challenged Payments during the 90 day preference period; and (3) that Bridge made each of the Challenged Payments to Gulfcoast.

Plan Administrator also produced the testimony of Mitchell Hirsh, an employee of American Express Tax and Business Solutions, who is serving as financial consultant to Plan Administrator. Mr. Hirsh testified that Bridge's unsecured creditors will not receive a distribution under Bridge's confirmed plan of liquidation.

Gulfcoast introduced the Payment Summary and the testimony of its general manager and vice president, Bradley A. Whitsett, at trial in support of its ordinary course defense under § 547(c)(2). The Payment Summary reflects that Bridge remitted payment to Gulfcoast on an average of 44 days after it received the invoice during the pre-preference period compared to an average of 42.68 days during the preference period. Also, the range of time between Bridge's payment and receipt of invoice during the pre-preference period was 14 to 105 days compared to a range of 21 to 77 days during the preference period. The Payment Summary additionally indicates that Bridge remitted payment to Gulfcoast after the 30 day due date for the vast majority of invoices in both the pre-preference and preference

---

**2.** Gulfcoast also asserted in its answer that Plan Administrator could not avoid the Challenged Payments under the subsequent new value defense contained in § 547(c)(4). Just prior to trial, however, Gulfcoast conceded that it could not produce sufficient evidence to support its subsequent new value defense and abandoned that defense.

period. But the Payment Summary also reflects that Bridge did pay some of the invoices early both in the pre-preference and preference period.

Mr. Whitsett testified that he has approximately 20 years of experience in the computer reselling industry. Mr. Whitsett also stated that he is a member of the American Society of Computer Dealers and is familiar with the credit practices within the computer resale industry. Mr. Whitsett further opined that the 30 day net term in the Sales Agreement was standard in the computer reselling industry and that it was quite common for customers not to pay within the 30 days without penalty. Mr. Whitsett also remarked that although not as common, some customers within the industry did remit payment prior to the due date.

The Court finds that the stipulated facts coupled with Mr. Hirsh's testimony and the Payment Summary demonstrate that the Challenged Payments were preferential under 11 U.S.C. § 547(b). Also, the Court finds that Gulfcoast failed to produce sufficient evidence that the provision in the Sales Agreement that allowed Bridge to match each payment with any outstanding invoice was within the range of terms prevailing in the computer reselling industry. Accordingly, Gulfcoast failed to demonstrate that the credit relationship between Gulfcoast and Bridge was objectively ordinary under 11 U.S.C. § 547(c)(2)(C). Thus, Gulfcoast did not establish its ordinary course defense under § 547(c)(2) and the Court will enter judgment in favor of Plan Administrator.

## DISCUSSION

*A. The Challenged Payments were preferential under 11 U.S.C. § 547(b).*

■ Section 547(b) provides that except as provided in § 547(c), a trustee or debtor-in-possession may avoid any trans-

fer of an interest of the debtor in property made:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) while the debtor was insolvent;

(4) —(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Plan Administrator has the burden of establishing each of the statutory elements of his preference action by a preponderance of evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l. Inc.),* 247 B.R. 463, 466 (8th Cir. BAP 2000); 11 U.S.C. § 547(g).

As stated above, Gulfcoast stipulated that Bridge made the Challenged Payments to Gulfcoast while Bridge was insolvent. Also, the Payment Summary, which Gulfcoast itself introduced into evidence, indicates that Bridge remitted each of the Challenged Payments to Gulfcoast within the 90 day preference period. Thus, the undisputed evidence indicates that Plan Administrator has met his burden of proof concerning §§ 547(b)(1), (b)(3), (b)(4) and (b)(5).

■ Thus, the only question here is whether Bridge made each of the Challenged Payments on account of an antecedent debt as required by § 547(b)(2). A debt is antecedent under § 547(b)(2) if it

was incurred before the debtor made the allegedly preferential transfer. *Jones Truck Lines v. Central States, Southeast & Southwest Areas Pension Fund (In re Jones Truck Lines)*, 130 F.3d 323, 329 (8th Cir.1997).

Here, the Payment Summary reflects that Bridge remitted each of the Challenged Payments to Gulfcoast after it received the associated invoice. Bridge did, however, make some of the Challenged Payments before the thirty day due date. Thus, the issue the Court must address is whether a payment made by a debtor after it received the goods but before the payment is due under the applicable agreement is a payment on account of an antecedent debt under § 547(b)(2).

■ A debt is incurred for purposes of § 547(b)(2) on the date upon which the debtor first becomes legally obligated to pay it. *In re Iowa Premium Serv. Co.*, 695 F.2d 1109, 1111 (8th Cir.1982) (*en banc*). Because the term "claim" and "debt" are coextensive under the Code, a debtor incurs a debt on an obligation once the creditor would have a claim against the debtor's estate if the debtor fails to pay for the goods or services provided. *Peltz v. Vancil (In re Bridge Info. Sys.)*, 302 B.R. 41, 46 (Bankr.E.D.Mo.2003). Therefore, because the debtor's obligation to pay the creditor arises as soon as it receives the goods or service in question, the debtor incurs a "debt" to the transferee for purposes of § 547(b)(2) when it receives the goods or services even if payment is not due until a later date. *Iowa Premium*, 695 F.2d at 1111–12; *Silverman Consulting, Inc. v. Canfor Wood Prod. Marktg. (In re Payless Cashways, Inc.)*, 306 B.R. 243, 255–56 (8th Cir. BAP 2004); *Vanguard Airlines, Inc. v. Airline Automation, Inc. (In re Vanguard Airlines, Inc.)*, 295 B.R. 329, 334 (Bankr.W.D.Mo.2003).

Here, there is no dispute that Bridge made each of the Challenged Payments after it received the computer components in question from Gulfcoast. Thus, even though Bridge remitted some of the Challenged Payments prior to the thirty day due date, each of the Challenged Payments was on account of an antecedent debt under § 547(b)(2). Accordingly, the undisputed evidence produced at trial demonstrates that Plan Administrator has established that each of the Challenged Payments was preferential under § 547(b).

*B. Gulfcoast failed to establish that the terms under which Bridge remitted the Challenged Payments to it were objectively ordinary under § 547(c)(2)(C).*

■ Gulfcoast's primary argument at trial was that although the Challenged Payments may have been preferential under § 547(b), Plan Administrator may not avoid those payments under the ordinary course defense contained in § 547(c)(2). Gulfcoast bears the burden of proof on its ordinary course defense. § 547(g). Specifically, Gulfcoast, to prevail on its ordinary course defense, must establish by a preponderance of the evidence that the Challenged Payments were: (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the creditor; (B) made in the ordinary course of business or financial affairs of the debtor and the creditor; and (C) made according to ordinary business terms. 11 U.S.C. §§ 547(c)(2)(A)-(C); *Concast Canada, Inc. v. Laclede Steel Co. (In re Laclede Steel)*, 271 B.R. 127, 130 (8th Cir. BAP 2002). The Court finds that because Gulfcoast failed to establish that Bridge made the Challenged Payments to it according to ordinary business terms as required by § 547(c)(2)(C), it failed to meet its burden of proof.

■ Section 547(c)(2)(C) requires the transferee to establish that the payment in question was objectively ordinary in rela-

tion to the standards and terms prevailing among similarly situated companies within the relevant industry with respect to the type of transaction in which the debtor made the payment. *Jones v. United Sav. & Loan Assoc. (In re U.S.A. Inns)*, 9 F.3d 680, 685 (8th Cir.1993). Although the transferee need not establish a uniform practice within the relevant industry, it must demonstrate that the payment and terms in question fall within the general range of terms that are prevailing within the relevant industry. *Id.*

■ Here, the Court finds that Gulfcoast failed to demonstrate that its practice of all' wing Bridge to direct how Gulfcoast shc ild apply each payment fell within the general range of terms within the computer resale industry. As mentioned above, Gulfcoast produced the testimony of its general manager and vice president, Bradley A. Whitsett, to establish that the Bridge made the Challenged Payments to it according to ordinary business terms. Whitsett's testimony focused exclusively on the industry practice concerning the length of time between invoice and payment. Specifically, Whitsett testified that the thirty day net provision in the Sales Agreement was the general rule in the computer resale industry and that it was very common for customers to remitted payment after thirty days without penalty.

Whitsett failed to testify, however, as to the industry practice concerning the method by which suppliers apply a customer's payment to outstanding invoices. In fact, the only evidence produced at trial concerning this issue was introduced by Plan Administrator. Plan Administrator introduced the deposition testimony of Gulfcoast's controller, Thomas A. Pyla, into evidence at trial. Pyla testified that Gulfcoast itself had no written policy concerning how it would apply each payment with respect to outstanding invoices. Rather, customers would remit payment directly to Gulfcoast's bank, European American Bank, and the bank would then inform Gulfcoast that a customer remitted a payment and which invoices the payment covered.

It is unclear from Pyla's deposition testimony whether this practice was consistent with Bridge's practice of directing which invoices it was paying with each payment. Payla at one point testified that Gulfcoast treated Bridge in the same manner as its other customers. Payla, however, also stated in his deposition that "[h]owever they (Bridge) told us (Gulfcoast) to pay it. We would pay the invoices they give [sic] us." This testimony suggests Gulfcoast may have treated Bridge differently than its other customers concerning Bridge's ability to direct how Gulfcoast should apply each payment to outstanding invoices. Even assuming, however, that Payla's testimony established that Gulfcoast treated Bridge similar to its other customers, that testimony would still be insufficient to establish that the practice was objectively ordinary under § 547(c)(2)(C).

■ Because Gulfcoast was required to establish that its practice of allowing Bridge to apply a payment to any outstanding invoice fell within the general range of terms prevailing in the computer resale industry, it could not rely solely on its own policy to meet its burden of proof under § 547(c)(2)(C). *Seaver v. Allstate Sales & Leasing Corp. (In re Sibilrud)*, 308 B.R. 388, 397 (Bankr.D.Minn.2004). Rather, Gulfcoast was required to produce evidence of industry practice concerning how suppliers apply a customer's payment to outstanding invoices to establish the general terms prevailing within the industry. *See Cent. Hardware Co. v. The Walker–Williams Lumber Co. (In re Spirit Holding Co.)*, 214 B.R. 891, 899–900 (E.D.Mo.1997) *aff'd.* 153 F.3d 902 (8th Cir.1998).

Here, Gulfcoast failed to produce any evidence concerning how creditors apply customer's payments within the computer resale industry besides its own informal policy. Thus, it failed to establish that its practice of allowing Bridge to direct which payments should apply to which invoices fell within the general terms prevailing in the computer resale industry.

 The Court notes that Gulfcoast's failure to establish that its practice of allowing Bridge to apply each payment to any outstanding invoice was objectively ordinary underscores one of the primary policy objectives underlying § 547(c)(2)(C). As the Seventh Circuit has noted, a primary policy goal underlying § 547(c)(2)(C) is to prevent that parties from creating unique payment terms that would allow the debtor to manipulate the timing of payments to the creditor during its slide into bankruptcy so that it appears that those payments are consistent with debtor's overall payment history to the creditor, which is critical in the subjective analysis of § 547(c)(2)(B). *In re Tolona Pizza Corp.*, 3 F.3d 1029, 1032–33 (7th Cir.1993). Here, Gulfcoast's policy of allowing Bridge to match each of its payment with any outstanding invoice clearly gave Bridge the opportunity at least to make each of the Challenged Payments appear more consistent with its overall payment history to Gulfcoast.

In conclusion, the only evidence produced at trial concerning the industry practice of allowing customers to match its payment with any outstanding invoice was Gulfcoast's own informal policy. Therefore, Gulfcoast failed to establish by a preponderance of the evidence that this practice was objectively ordinary with the computer resale industry under § 547(c)(2)(C).

## CONCLUSION

The stipulated facts along with Hirsh's testimony and the Payment Summary established that the Challenged Payments were preferential under § 547(b). Also, Gulfcoast failed to establish by a preponderance of the evidence that its practice of allowing Bridge to match each payment with any outstanding invoice was objectively ordinary with the computer resale industry under § 547(c)(2)(C). Therefore, Gulfcoast failed to establish its ordinary course defense under § 547(c)(2). Accordingly, Plan Administrator may avoid the Challenged Payments under § 547(b) and recover those payments from Gulfcoast under § 550(a)(1). Thus, the Court will enter judgment in favor of Plan Administrator.

An Order consistent with this Memorandum Opinion will be entered this date.